**Fill in this information to identify the case:**

Debtor name: **Guided Systems Technologies, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF GEORGIA

Case number (if known): **18-61243**

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

Guided Systems Technologies, Inc.'s Plan of Reorganization, Dated April 30, 2019

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **Guided Systems Technologies, Inc.** (the *Debtor*) from cash flow from operations, and future income.

This Plan provides for:　**0** classes of priority claims;

　**0** classes of secured claims;

　**1** classes of non-priority unsecured claims; and

　**1** classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **4** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. you should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2** | Claims, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 3** | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** | Equity interests of the Debtor. |

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.☐ |

| Debtor | **Guided Systems Technologies, Inc.** | Case number (*if known*) | **18-61243** |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid the full value of its allowed claim on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and Debtor, with such payment subject to the right of Debtor to object to all or any part of each asserted claim; provided, however, if Debtor determines to object to such a claim Debtor must reserve a sufficient amount of funds in its bank account to pay the claim in full, with interest, in the event its objection to such claim is denied.  Debtor shall have 3 months from the Effective Date to file any such objection. |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☐ Unimpaired | No priority claims exist other than those tax claims treated in Article 3.03. |
| Class 2 – **Secured claims** (None.) | ☐ Impaired<br>☐ Unimpaired | Debtor asserts that no claimants have a secured claim in this case. Pursuant to 11 U.S.C §§ 1123(a)(5)(e) and 1123(b)(5), to the extent any claimant asserts a lien on or security interest in any of Debtor's assets, upon the Effective Date of the Plan, such lien or security interest will be deemed satisfied in full, cancelled and stripped from Debtor's property. |
| **Class 3 – Non-priority unsecured creditors** | ☑ Impaired<br>☐ Unimpaired | Non-priority unsecured Claims in Class 3 shall be treated as described in Article 7 below. |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired<br>☑ Unimpaired | The equity security holder of Debtor shall be treated as described in Article 7 below. |

Debtor **Guided Systems Technologies, Inc.**     Case number (*if known*) **18-61243**
Name

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim:** | A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: |
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim:** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final nonappealable order. |
| 5.03 | **Settlement of disputed claims:** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br>None. |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than __**21**__ days after the date the order confirming this Plan is served on the counter party. |

### Article 7: Means for Implementation of the Plan

Debtor  **Guided Systems Technologies, Inc.**                                   Case number (*if known*)  18-61243
            Name

Debtor will implement the Plan as follows:

**Plan funding:** The Plan will be funded by Debtor's income stream from existing customers and customers to be obtained in the ordinary course of business over the life of the Plan. Debtor estimates it will generate approximately $86,000 for distribution to creditors over the 5 year life of the Plan. This estimate is reflected in the Plan Budget attached to this Plan in the line item titled "Plan Distribution Fund." The actual amount of the Plan Distribution Fund may be more or less than the estimate reflected in the Plan Budget, depending on the post-petition performance of the reorganized Debtor.

The Plan Distribution Fund will be allocated as follows: a) 10% to fund an "Administrative Claims Fund," for payment of allowed administrative claims in the case; b) 10%, or such other amount as is necessary to pay in full priority tax claims, to the "Priority Tax Fund," for payment of allowed priority tax claims; and c) the remaining 80%, to fund the "Class 3 Fund" to pay allowed general unsecured claims. To the extent the money in the Administrative Claims Fund and the Priority Tax Fund are not used in full to pay allowed administrative or priority tax claims, the unspent amounts shall be reallocated to the Class 3 Fund to be paid to Class 3 creditors.

**Treatment of Administrative Expense Claims.** Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and Debtor. Currently, the only administrative expense claim is held by Debtor's counsel for unpaid legal expenses incurred during the course of the case. Debtor's counsel has agreed to receive payment from the Administrative Claims Fund for amounts owed in excess of the amounts currently held in its trust account ($3,603.98).

**Treatment of Priority Tax Claims.** A total of two proofs of claim have been filed asserting a total of $8,683.69 in priority tax claims. The Internal Revenue Service filed Claim #3-2, asserting a priority amount of $217.55 (in addition to other amounts asserted as a general unsecured claim). The Georgia Department of Revenue filed Claim #5, asserting a priority amount of $8,466.14. (in addition to other amounts asserted as a general unsecured claim). Debtor will research these claims to determine whether and to what extent each claim satisfies the statutory standard for receiving priority treatment.

**Treatment of United States Trustee Fees.** All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date or within a reasonable time thereafter.

**Distributions.** Distributions from each Fund shall be made on a semi-annual basis for a period of 60 months from the Effective Date, with such payments commencing 12 months after the Effective Date of the Plan. Claimants with allowed claims shall receive a *pro rata* share of the Fund established to make distributions to their respective claimants based on the allowed amount of each claimant's claims. Debtor shall have the option to prepay these claims prior to the expiration of the 60 month period, without penalty; provided, however, that the total of the prepayment amount to each claimant

shall equal at least the amount each claimant would receive from its respective Fund over the 60 month duration of the Plan.

**Treatment of Equity Security Holder.** The current sole equity security holder, J. Eric Corban, Ph.D., will continue as the sole equity holder on and after the Effective Date.

### Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of **Georgia** govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan source of funds for payment under plan. |

| Debtor | **Guided Systems Technologies, Inc.** | Case number (*if known*) | **18-61243** |
|---|---|---|---|
| | Name | | |

| 8.07 | **Corporate Governance** | **Management:** Dr. Corban will continue in his role as President and Chief Technology Officer. Under Dr. Corban, Guided Systems will continue in its current line of business: providing engineering services to existing customers, while also continuing new business development efforts by responding to requests for proposals from potential new and existing customers. |
|---|---|---|
| | | Dr. Corban's resume: Dr. Corban is President, Chief Technical Officer and Founder of Guided Systems Technologies, Inc. (GST). Under his direction over the last 24 years, GST has performed innovative navigation, guidance and control research and development efforts for customers within the US Air Force, Army, Navy, and Marine Corps, as well as NASA, DARPA and leading aerospace manufactures.  Under his direction, GST has obtained broad patent protection for adaptive control, guidance and estimation technology developed in partnership the Georgia Institute of Technology.  Dr. Corban led efforts to implement and flight test this technology on several unmanned helicopters for the U.S. Army in the mid 1990s.  He supported GST's program to develop an adaptive autopilot for the USAF/Boeing RESTORE effort.  This program culminated in flight test of GST's adaptive control system technology on the X-36 in 1998.  Dr. Corban directed the application of this technology to several variants of the Joint Direct Attack Munition for the USAF Munitions Branch at Eglin in a program which produced flight validation on the MK-84 and subsequently lead to incorporation on production JDAM variants.  Under his direction, this adaptive control technology has been applied to a large number of other flight vehicles, as well as space launch systems.  Dr. Corban has served as the Principal Investigator on a wide variety of funded research and development efforts that include vision based navigation, real-time path planning, obstacle avoidance, and adaptive ballistic missile intercept guidance.  He has lead the development and implementation of flight control solutions for a wide variety of fixed and rotary wing aircraft, including the USAF/AeroVironment Skytote UAS, the AV Global Observer, the DARPA/AAI Transformer, the L3 Valkyrie, and the Northrop Grumman RBat.  At present, Dr. Corban's company provides a fully autonomous rotary wing UAV autopilot solution using its patented adaptive control technology in partnership with Cloud Cap Technology (now part of UT Aerospace).  He also leads the design, development, manufacture, test, validation, delivery, and support of several fully integrated unmanned helicopter systems for diverse customers that include the Military, Civil and Commercial users.  Dr. Corban's team recently completed multiple demonstrations of towed autogyro maritime operations, including tethered launch and recovery from a very small platform launch and recovery platform.  Dr. Corban recently lead the contracted development of a helicopter UAV for Counter IED operations under a USAF Rapid Innovation Fund Contract, lead the flight control and autonomy design work on the DARPA/Carter Aerospace TERN team, and lead a US Army contracted effort to develop and deliver a fully-electric tethered helicopter UAS for persistent surveillance from a mobile platform.  Since the recent commercial regulation of UAV by the Federal Aviation Adminstration (FAA), Dr. Corban has also spear-headed a number of commercial application development efforts to include inspection of the interior of industrial stacks at Depart of Energy nuclear facilities, high-voltage power transmission line inspection, and precision mosquito spraying. |
| | | Prior to his graduate studies he was a member of the technical staff at McDonnell Douglas Helicopters and worked in the areas of rotorcraft acoustics and flight test.  He holds a BS in physics from Millsaps College (1983), and BS (1983), MS (1985) and PhD degrees (1989) in Aerospace Engineering from the Georgia Institute of Technology.  He has been a member of the AIAA, IEEE, American Helicopter Society, and the Association for Unmanned Vehicle Systems International, and has authored a number of conference and peer reviewed journal articles in aerospace applications of nonlinear adaptive guidance and control. |

| Debtor | **Guided Systems Technologies, Inc.** | Case number (*if known*) | **18-61243** |
|---|---|---|---|
| | Name | | |

**Dr. Corban's Job Responsibilities.** Since founding the company in 1989, Dr. Corban has served primarily in the role of business development and as Chief Technology Officer, while also planning and supervising funded projects, as well as internal product development efforts. The size of the GST workforce has varied over the years, peaking during the last decade at 12 full-time employees, including 3 additional Ph.D. level research and development engineers. During this time period GST and Dr. Corban benefitted from the support of a full-time general manager and various technical support staff. Due to recent financial hardship, very nearly all of the full-time staff have been lost, and Dr. Corban has again taken on the responsibilities of all management and administrative duties, in addition to continuing in his role of business development, technology leadership, project planning an execution, and product development.

**Dr. Corban's Compensation.** Dr. Corban will draw a salary equal to his pre-petition average monthly salary, of approximately $7,862 per month, and receive company provided health insurance at approximately $2,829 per month.

| 8.08 | **Retention of Jurisdiction** | The Court shall retain jurisdiction in this Case for the limited purposes set forth in the Plan, subject to the limitation of Bankruptcy Rule 2015 and BLR 3022-1. |
|---|---|---|

## Article 9: Discharge

9.01  ☐  **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

☐  **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

☑  **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

☐  **No discharge if § 1141(d)(3) is applicable.** In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

Debtor **Guided Systems Technologies, Inc.**  Case number (*if known*) **18-61243**
Name

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

**None.**

Respectfully submitted,

**X /s/ Dr. J. Eric Corban**           **Dr. J. Eric Corban**
[Signature of the Plan Proponent]      [Printed name]

**X /s/ David A. Geiger**              **David A. Geiger**
[Signature of the Attorney for the Plan   [Printed name]
Proponent]